JONES, Respondent, v. ST. LOUIS, IRON MOUN-
TAIN & SOUTHERN RAILWAY COMPANY,
Appellant.

**St. Louis Court of Appeals, February 9, 1909.**

1. **COMMON CARRIERS: Negligence: Duty to Keep Cars in
   Repair.** In an action by a shipper against a railroad company
   for an injury received by the falling of the door of the car in
   which he had shipped his goods, he did not make out a case
   showing a failure of the defendant to perform its duty in fur-
   nishing a car in good condition, where his testimony only
   showed that the door was intact when furnished him and got
   out of repair during the trip.

2. ————: ————: **Passengers.** Where a shipper obtained per-
   mission of a railroad company, over whose line he shipped a
   carload of melons, to ride on the same train in charge of the
   melons, after arriving at his destination and while inspecting
   the car he was not a passenger and the railroad company owed
   him no duty at the time as such.

3. ————: ————: **Prima-Facie Case.** Where a shipper of a
   carload of melons, while inspecting the car on its arrival at
   destination, was injured by the falling of the door of the car
   upon him, in an action against the railroad company for the
   injuries received, he failed to make out a case against the de-
   fendant in failing to show any act of negligence which caused
   the door to fall.

Appeal from Scott Circuit Court.—*Hon. Henry C.
Riley,* Judge.

REVERSED.

*Martin L. Clardy* and *James F. Green* for appel-
lant.

No negligence on the part of defendant was proven,
but the evidence showed simply a case of accident; for
which there is no liability. Fuchs v. St. Louis, 167
Mo. 635; Boland v. Railroad, 36 Mo. 484; Chanler v.
Gas Company, 174 Mo. 321; Kelley v. Railroad, 105
Mo. App. 376.

*M. G. Gresham* and *George B. Parsons* for respondent.

GOODE, J.—In August, 1905, this plaintiff shipped a carload of watermelons over defendant's railway from Morley in Scott county, to St. Louis as the point of destination. He was accorded the privilege of peddling the melons at stations on the way. For this purpose he went along as a passenger on the train, and prior to reaching the station of De Soto, observed the door of the car containing his melons hung by only one hinge, or "hanger" as the witnesses say. Plaintiff testified the door came off a hinge while in transit. The train arrived at De Soto after dark and plaintiff's car was pulled opposite the passenger depot. He got off the car at De Soto and looked about the railway yards, believing he would find car repairers or inspectors who would adjust the hanging of the door. He asked two workmen he met in the yards if they were car repairers or inspectors, and on receiving an affirmative answer, told them of the door of his car being out of order and that he wanted it fixed. He and those two men walked back to the car, and as the car door was taken hold of by one of the three, or was about to be, it fell on plaintiff, cracking his skull, his testimony goes to prove, though there is other testimony which looks like the injury was slight. Just what caused the fall of the door is uncertain and different conclusions might be drawn from the evidence, some of which tends to prove the fall was due to a jar or motion of the train as one or more of the three men was or were in the act of lifting it. Other evidence is that it simply fell over when one of the car repairers lifted it and still other evidence is that plaintiff himself was helping to lift it when it fell. His version is that after the two men had agreed to fix the door, he walked back with them a few steps to the car, pointed it out and then, while he was standing about four feet away, one of the work-

men took hold of the door, or made a motion to do so, and just then the thought struck plaintiff the door might fall on him and he started to run, but it caught him and bore him to the ground. Plaintiff testified the workman had reached out to take hold of the car door when it fell, but plaintiff did not know whether the workman actually had taken hold of it or not. This is the bit of his testimony which shows how he understood the occurrence:

"He reached out his hand and I don't think it was ten seconds hardly from the time I asked him—I told him I had a car door out of repair—I couldn't lock it —and asked him if he could fix it, just a short time; it was not but a few feet to the car door, and we started walking back and I said this is the car, and the next thing I knew the car door hit me.

"Q. When you said 'this is the car,' did you knock it with your hand or anything of that kind? A. I don't know whether I did or not; I just said, 'this is the car.' "

Another witness testified much like plaintiff, saying the latter asked the two men if they would fix his car; they told him they would, and started back with him; about the time plaintiff got to the door, witness saw the hand of one of the workmen go upward, but did not know whether he took hold of the door; then the switch engine gave the train a jerk and the door fell. Another witness said a car repairer started to push the door up and it fell. One of the car repairers testified plaintiff himself was lifting the door when it fell. The negligence charged is furnishing plaintiff a car with a broken door and then sending two employees to repair it who carelessly jerked it while plaintiff was standing by, thereby causing it to fall on him. An instruction to the jury was that if the company undertook to furnish plaintiff a car in which to ship and peddle watermelons, its duty was to furnish a car in good condition and repair, and if plaintiff was injured

by the omission of said duty, defendant was liable in damages. Plaintiff's own testimony shows the car door was intact when furnished and got out of repair during the trip. No case was made on this assignment of negligence and the instruction submitting it should have been refused. Another instruction for plaintiff was that defendant as a common carrier, was liable for even slight negligence to passengers, and was bound to exercise the same care for a person on the train in charge of a carload of melons and peddling the same, as the law required to be exercised for the safety of passengers on passenger trains, except that the person in charge of the carload of melons attached to a freight train, must submit to dangers and inconveniences incident to traveling on freight trains. This instruction was outside the issues; and, moreover, could have no relevancy to the facts, because plaintiff was not injured while riding as a passenger on the train, but while he was walking about the yards of the company at a wayside station. The only theory of recovery allowable on the petition, except the one first mentioned, was negligent handling of the door by the car repairers, or one of them, whereby it was caused to fall on plaintiff. That was the negligence assigned, but there was little, if any, evidence adduced tending to establish it. If plaintiff himself was not the cause of the injury, that is, if he did not lift the door and cause it to fall, the occurrence looks like a pure accident. It was not proved with any certainty a servant of defendant touched the door. Most of the witnesses, including plaintiff himself, said no more than that a repairman raised his hand toward the door at the instant it fell, but one witness said a workman started to push it up and it fell. Granting this act happened, the inference that it was unskilfully or was carelessly done, is unwarranted, for there is no proof that it was unnecessary to lift the door to see how it should be repaired, or that it was unskilfully lifted.

If plaintiff's position was dangerous, he had assumed it voluntarily and knowing the door would be handled; for this was implied in his request to the men to rehang it. It may be said the repairmen should have warned him away before they took hold of the door if he was not helping and they knew, or ought to have known, he would be imperiled when it was raised. But no omission of duty involving this doctrine was counted on in the petition.

The judgment will be reversed. All concur.